IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHONDELL DAYE et al.,

    Plaintiffs,

      v.

CRETE CARRIER CORPORATION, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-1376-TWT

## OPINION AND ORDER

This is a personal injury action. It is before the Court on Defendants
Crete Carrier Corporation ("Crete") and Sonya Bridges's Motion for Partial
Summary Judgment [Doc. 124]. For the reasons set forth below, the Court
GRANTS Crete and Bridges's Motion for Partial Summary Judgment
[Doc. 124].

## I.   Background[1]

This action arises from a 2021 motor vehicle incident in Newton County,
Georgia, involving vehicles operated by Plaintiff Shondell Daye and Defendant
Sonya Bridges. (Defs.' Statement of Undisputed Material Facts ("Defs.'
SUMF") ¶ 1 [Doc. 124-1].) Daye and Bridges were both traveling in the same
direction, with Bridges driving behind Daye. (*Id.* ¶ 3.) Although the

---

[1] The operative facts on the Motion for Partial Summary Judgment are
taken from the parties' Statements of Undisputed Material Facts and the
responses thereto. The Court will deem the parties' factual assertions, where
supported by evidentiary citations, admitted unless the respondent makes a
proper objection under Local Rule 56.1(B).

circumstances of the collision are disputed, the parties agree that Daye attempted to turn left around the same time that Bridges attempted to pass Daye on the left. (*See id.* ¶ 7.[2]) At the time, Plaintiff Deidra Lucas was a passenger in Daye's vehicle, (*see* Daye Dep. at 44:4–7, 98:15–99:1 [Doc. 125-1), and Bridges was driving in the course of her employment with Defendant Crete Carrier Corporation, (*see* Bridges Dep. at 26:2–13 [Doc. 125-3]).

The facts of Bridges's driving history are relevant here. In 2016, Bridges completed trucking school and obtained her commercial driver's license. (Defs.' SUMF ¶ 13.) She then worked at another trucking company for a time before switching to Crete in 2017. (*Id.* ¶ 16.) The following events occurred while operating her commercial vehicle[3]: In 2017, Bridges received a citation for obstructing traffic due to an encounter with a boulder. (Pls.' Statement of Additional Undisputed Material Facts ("Pls.' SUMF") ¶¶ 7–8 [Doc. 126-6].) A couple weeks later, she attempted a turn in a truck yard that resulted in minor damage to her truck and some equipment falling off the truck. (Defs.' SUMF

---

[2] Paragraph 7 states: As soon as Bridges began to pass Daye, he turned his vehicle to the left, without activating his turn signal, and directly into the path of her vehicle. (Defs.' Statement of Undisputed Material Facts ¶ 7.) The Plaintiffs denied this statement to the extent it states Daye did not active his left-turn signal. (Pls,' Resp. to Defs.' Statement of Undisputed Material Facts ¶ 7.) The Defendants later admitted that Daye activated his left-turn signal. (Defs.' Resp. to Pls.' Statement of Additional Undisputed Material Facts ¶ 4.)

[3] In addition to the facts stated above, Bridges reported receiving two tickets for an overweight axle and missing mud flaps, (Pls.' SUMF ¶¶ 17), and Crete recorded several hours-of-service violations in which Bridges drove for more time than authorized, (Pls.' SUMF ¶¶ 9, 13, 20; Defs.' SUMF ¶ 30). The Court finds these incidents irrelevant to the present motion.

¶ 23; Pls.' SUMF ¶¶ 10–11.) In 2018, Bridges was issued a citation for an improper lane change, then subsequently completed a defensive driving course and "DriveCam" training in which Crete used a camera to monitor her driving. (Defs.' SUMF ¶¶ 24, 31; Pls.' SUMF ¶ 15.) In 2019, equipment fell off her truck while attempting a turn in one incident, and she was cited for failing to keep her truck on the road in another incident. (Defs.' SUMF ¶ 27; Pls.' SUMF ¶ 16.) In 2020, Bridges was "involved in a collision with another vehicle while making a left turn." (Defs.' SUMF ¶¶ 28–29.) While she was not cited, (*id.*), Crete determined that it was a preventable accident, (Pls.' SUMF ¶ 19). Regarding Bridges's personal driving history, her personal driver's license was suspended between September and December 2016. (*Id.* ¶ 5.) Bridges testified that her license was suspended after she failed to appear for a summons related to a citation for lack of insurance. (Bridges Dep. at 43:6–46:4.)

The Complaint alleges the following claims: (1) ordinary negligence, (2) negligence per se, (3) vicarious liability, (4) negligent hiring, training, and supervision, (5) compensatory damages, and (6) punitive damages (Compl. ¶¶ 14–44 [Doc. 4]. [4] ) Defendants Crete and Bridges presently move for summary judgment as to the negligent hiring, training, and supervision claim against Crete (Count IV) and the punitive damages claim (Count VI).

---

[4] The Court notes that Doc. 4 reflects the full and correct version of the Complaint, not Doc. 1-1.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

### A. Negligent Hiring, Training, and Supervision (Count IV)

Count IV is titled "negligent, hiring, training & supervision," but it alleges that Crete was negligent across seven different activities: (a) hiring, (b) training, (c) supervision, (d) entrustment, (e) "fail[ure] to implement safety practices to assure safe operation of vehicles being driven by their drivers," (f) "fail[ure] to obey and enforce" federal and state safety regulations, and (g) "fail[ure] to exercise that degree of care and caution that a reasonable and prudent company would have exercised." (Compl. ¶ 34.)

The Defendants are entitled to judgment as a matter of law on Count IV in its entirety. As an initial matter, the Plaintiffs do not respond to the Defendants' arguments regarding the first two activities (hiring and training) or the last three (safety practices, regulations, reasonable degree of care), nor do they present any evidence to support these claims. The Court's independent review of the record reveals no evidence suggesting that Crete was negligent in those areas. Crete hired Bridges after she had completed driving school, received her commercial driver's license, and had been driving for approximately one year with another company with no apparent problems. (Defs.' SUMF ¶¶ 33–34.) Crete presented evidence that Bridges participated in a variety of trainings. (*Id.* ¶ 35–37.) And there is no evidence that any regulations or other duties of care were breached. The Court therefore grants summary judgment for the Crete on these five claims to the extent they are alleged in the Complaint.

The Court turns to the remaining two claims (negligent supervision and entrustment). First, the Court grants summary judgment on the negligent supervision claim. To establish a claim for negligent supervision,[5] a plaintiff must establish that the employer "reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries

---

[5] The parties refer to both "negligent supervision" and "negligent retention." It is the Court's understanding that these claims are one and the same, as the parties cite the same underlying law.

allegedly incurred by the plaintiff." *Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 863 (2004) (quoting *Harvey Freeman & Sons, Inc. v. Stanley*, 259 Ga. 233, 234 (1989)). A plaintiff need not show that the employer knew about the employee's tendency to "commit the *specific* tortious or criminal act that caused the plaintiff's injury," only that injury fell "'within the risk' posed by the offending employee's tendencies." *Little-Thomas v. Select Specialty Hosp.-Augusta, Inc.*, 333 Ga. App. 362, 365 (2015) (citation omitted).

Here, the Plaintiffs have failed to show that Bridges had a "tendenc[y] to engage in [ ] behavior relevant to the injuries allegedly incurred by the plaintiff." *See Munroe*, 277 Ga. at 863 (citing *Stanley*, 259 Ga. at 234). The Plaintiffs' injuries allegedly occurred due to an improper lane change. In reviewing Bridges's commercial driving record, the Court finds three prior moving violations over approximately five years: (1) Bridges's 2017 citation for obstructing traffic when she encountered a boulder on the road, (Pls.' SUMF ¶¶ 7–8); (2) her 2018 citation for an improper lane change, (Defs.' SUMF ¶ 24), and (3) her 2019 citation for failing to keep her truck on the road, (Pls.' SUMF ¶ 15). Bridges was additionally involved in a 2020 collision with another vehicle, for which she was not cited but which Crete deemed "preventable." (Defs.' SUMF ¶¶ 28–29; Pls.' SUMF ¶ 19.) While a jury might find her citation for improper lane change related to the alleged improper passing incident, it is not apparent that her other two citations or the collision are related to improper passing. And the Plaintiffs have failed to explain why improper

6

passing fell "within the risk" posed by the other two citations or the collision. No reasonable jury could find that Bridges had a *tendency* to engage in improper passing or similar behavior based on only one related citation in the past. *Hughey v. KTV's Transp., LLC*, 2022 WL 902841, at *4 (N.D. Ga. Mar. 28, 2022) (granting summary judgment on a negligent retention claim after finding two prior speeding violations but no prior violations related to the incident in question, which concerned "following too closely" and "improperly changing lanes"). Moreover, after the improper lane change citation, Crete required Bridges to complete a defensive driving course and additional training. (Defs.' SUMF ¶¶ 24, 31; Pls.' SUMF ¶ 15.) The other incidents to which the Plaintiffs point—a tight turn in a truck yard, the falling equipment, and a suspended personal license for failure to appear in court for an insurance-related citation—are plainly unrelated to improper passing.

The Plaintiffs rely on only one case, *Tuk v. U.S. Xpress, Inc.*, 2021 U.S. Dist. LEXIS 112126 (S.D. Ga. June 15, 2021),[6] but that case is distinguishable. There, the defendant had received a citation for "reckless driving related to speeding," had received another citation for speeding in a construction zone, and was involved in a preventable incident. *Id.* at *7, 18. His vehicle later struck the plaintiff's vehicle from behind on the highway. *Id.* at *4–5. The

---

[6] Out of clarity, the Court notes that this opinion does not appear to be available on Westlaw and is distinct from the one reported at *Tuk v. U.S. Xpress, Inc.*, 2021 WL 2910716 (S.D. Ga. July 12, 2021).

Southern District of Georgia held that his prior incidents were "numerous enough and b[ore] sufficient similarity to the accident at issue such that their occurrences could have demonstrated to [the employer] that [the defendant] may pose a risk of harm to others while driving for [the employer]." *Id.* at \*19–20. The Plaintiffs here assert that Bridges's driving history "is much more egregious" than the defendant in *Tuk*, but the Court disagrees. The whole of Bridges's record is less serious than that in *Tuk*, which included a "reckless driving" citation. But more importantly, unlike in *Tuk* where the court found the prior speeding citations and accident "sufficient[ly] similar[ ]" to the accident in dispute there, the Court here finds that only Bridges's improper lane change citation appears to be related to the accident in dispute.

Second, the Court grants summary judgment on the negligent entrustment claim. To establish a claim for negligent entrustment of a vehicle, a plaintiff must establish that the employer acted negligently in "lending his vehicle to another to drive, with actual knowledge that the driver is incompetent or habitually reckless." *Quynn v. Hulsey*, 310 Ga. 473, 477 (2020) (quoting *CGL Facility Mgmt., LLC v. Wiley*, 328 Ga. App. 727, 731 (2014)). Where the negligent supervision claim presented a closer call, this claim does not. While Bridges's record is not perfect, it does not rise to incompetence or habitual recklessness as a matter of law. *Hicks v. Heard*, 297 Ga. App. 689, 691–92 (2009) (affirming the trial court's decision to grant summary judgment where the defendant previously received a speeding citation and another

8

accident that resulted in a failure-to-yield citation); *Hughey*, 2022 WL 902841, at *4 (considering a negligent hiring and retention claim, but finding that "[n]o reasonable jury could find that [the defendant] was accident-prone based on two speeding tickets over the course of a decade"). Her prior incidents were not so serious or frequent as to show "dangerous propensities" or otherwise show she was "not accustomed to act with due care," as would be required for this claim. *See TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 459 (2003) (citation omitted).

## B. Punitive Damages (Count VI)

In Georgia, a plaintiff in a tort action may be properly entitled to punitive damages where there is "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Mere negligence, even gross negligence, is not enough to support a claim for punitive damages." *Lindsey v. Clinch Cnty. Glass, Inc.*, 312 Ga. App. 534, 536 (2011) (citing *Brooks v. Gray*, 262 Ga. App. 232, 232 (2003)). Punitive damages require "a pattern or policy of dangerous driving, such as excessive speeding or driving while intoxicated" and are not permitted when "a driver simply violates a rule of the road." *Id.* at 535.

The Defendants argue that the Plaintiffs have failed to provide evidence to support their request for punitive damages. (Br. in Supp. of Defs.' Mot. for

Partial Summ. J., at 18–23 [Doc. 124-2].) In response, the Plaintiffs argue that Bridges's "egregious" driving record, including citations for an improper lane change and a failure to stay on the road, justifies punitive damages. (Pls.' Resp. Br. in Opp'n to Defs.' Mot. for Partial Summ. J., at 11–12 [Doc. 126-1].)

No reasonable jury could find that a couple rules-of-the-road violations amount to a pattern of "dangerous driving" sufficient to impose punitive damages. *See Collins v. GKD Mgmt., LP*, 697 F. Supp. 3d 1308, 1325–26, 1332 (N.D. Ga. 2023) (granting summary judgment as to punitive damages against the driver's employer, where the employer was aware of the driver's citation prior citations—failure to obey a traffic sign, speeding, and other "miscellaneous traffic law violations"—and involvement in a prior accident); *Bartja v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 218 Ga. App. 815, 818 (1995) (granting summary judgment as to punitive damages where the driver received citations for driving on the wrong side of the road, disregarding a stop sign, and driving into a parked vehicle, among other things). At most, these violations suggest negligence on the part of the Defendants. Something more serious, on the level of "excessive speeding or driving while intoxicated," is needed for the Plaintiffs' claim to succeed. *See Lindsey*, 312 Ga. App. at 535. The Court thus grants the Defendants' Motion for Summary Judgment as to the Defendants' request for punitive damages in Count VI.

## IV.    Conclusion

For the reasons set forth above, the Court GRANTS Crete and Bridges'

Motion for Partial Summary Judgment [Doc. 124].

SO ORDERED, this _____3rd_____ day of April, 2026.


THOMAS W. THRASH, JR.
United States District Judge

11